IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Julius Larry,<br><br>Plaintiff,<br><br>v.<br><br>Vital Proteins, LLC, Nestle Healthcare Nutrition, Inc., and Nestle Health Science US Holdings, Inc.,<br><br>Defendants. | ) | No. 26 C 8918 |

Memorandum Opinion and Order

Plaintiff Julius Larry filed suit against defendants Vital Proteins, LLC ("Vital Proteins"), Nestle Healthcare Nutrition, Inc. ("NHN"), and Nestle Health Science US Holdings, Inc. ("NHS") for violations of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 to 5/10-105, arising from his employment as a Quality Technician between 2022 and 2023. In front of me is NHS's motion to dismiss. For the following reasons, I grant NHS's motion in part.

I.

The complaint alleges that Vital Proteins, NHN, and NHS employed Larry as a "Quality Technician" at "their facility" at 3400 Wolf Road, Suite 200, Franklin Park, Illinois 60131. ECF 1-1

at 9. Vital Proteins "conduct[ed] business and maintain[ed] operations at 3400 Wolf Road, Suite 200, Franklin Park, Illinois 60131," while NHN and NHS "conduct[ed] business in Illinois." *Id.* at 8. Larry began working for defendants in March 2022 and worked for defendants until November 9, 2023.

Larry alleges that "Defendants' authorized agents, servants, and employees" harassed and discriminated against him throughout his tenure as a Quality Technician. *Id.* at 10. Shortly after beginning his employment, Quality Assurance told Larry that he and another Black male employee could not work alone, a restriction which was enforced only against Black employees on his shift. Other employees routinely used "the n-word," and Larry observed other employees call a Black employee a "cockroach." *Id.* Other employees referred to Larry as a "crackhead," and Larry's car was keyed at the workplace in August 2022. *Id.*

Throughout Larry's employment, the Quality Assurance team conducted meetings in Spanish, a language that Larry does not speak. Defendants required Larry to announce his movements, a requirement not applied to Spanish-speaking employees. *Id.* at 12. Every employee on Larry's shift team who did not speak Spanish as a first language ultimately quit. Other employees inappropriately touched Larry, and he faced rumors about his sexuality.

Larry filed a formal complaint about the mistreatment of workers on his shift with Johanna Pistell, the Vice President of

Human Resources at Vital Proteins, on or about February 27, 2023. Pistell arranged a video call with "members of Defendants' headquarters HR team." *Id.* at 11. Following Larry's complaint, "Defendants' authorized agents" subjected Larry to insubordination charges, gave him "attendance points" for leaving early that other employees did not receive, and denied him a promotion. *Id.* Larry also brought complaints of sexual harassment to the Human Resources department, which Human Resources employees disregarded. "Defendants' authorized agents . . . ultimately contributed to his constructive discharge," which occurred on November 9, 2023. *Id.* at 9, 15.

Larry filed charges of discrimination under the IHRA with the Illinois Department of Human Rights ("IDHR") on September 3, 2024. On March 10, 2026, Larry received a notice from the IDHR stating that the charges were administratively dismissed due to the investigation period lapsing. Larry filed a complaint in the Circuit Court of Cook County on June 3, 2026. NHS removed the case to federal court on July 28, 2026.

II.

In the exercise of diversity jurisdiction, federal courts apply state substantive law and federal procedural law. *Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 735 (7th Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, I accept a complaint's allegations as true, but I need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

III.

I first consider the timeliness of Larry's complaint. NHS argues that Larry's complaint is untimely because it was filed outside the statutory period permitted by the IHRA. Larry responds that the complaint is timely because it was filed on June 3, 2026, eighty-five days after he received the notice from the IDHR informing him that his charges were administratively dismissed.

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quoting *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial) . . . ." *Id.*

The IDHR investigates each charge of discrimination and prepares a report which is presented to the Director of Human Rights. 775 Ill. Comp. Stat. 5/7A-102(D)(1). Based on this report, the Director will "determine whether there is substantial evidence that the alleged civil rights violation has been committed." *Id.* at 5/7A-102(D)(2). Upon receiving notice of the Director's determination, the complainant may choose to commence a civil action in circuit court. *Id.* at 5/7A-102(D)(3)–(4). If the complainant chooses to commence a civil action, she must file the complaint within ninety days of *receipt* of the Director's notice. *Id.*

The IHRA also includes another mechanism giving complainants the right to commence a civil action. "If the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant *shall have* 90 days to . . . commence a civil action in the appropriate circuit court." *Id.* at 5/7A-102(G)(2) (emphasis mine).

Larry received the right to commence a civil action because the Department had not issued its report within the required period, so the timing requirements of subsection 102(G)(2) apply, not those of subsections 102(D)(3) and (4). Therefore, the relevant question is whether the complaint was filed within ninety days of the end of the investigation period, not whether the complaint was

filed within ninety days of *receipt* of any notice from the IDHR. *See Rabé v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 819 (N.D. Ill. 2013) ("Only after a complainant either (a) receives a final report from the Department or (b) the Department fails to issue its report within 365 days after the charge is filed, may the complainant commence a civil action in circuit court. In either circumstance, the complainant must file her civil action within 90 days of the qualifying event." (citation omitted)); *Copeling v. Ill. State Toll Highway Auth.*, No. 1:12-CV-10316, 2014 WL 540443, at *4 (N.D. Ill. Feb. 11, 2014) (holding, without considering or discussing any notices from the IDHR, that plaintiff failed to exhaust her IHRA claim when she filed her complaint within 365 days of filing her charge); *see also Brazas v. Claps*, 2012 IL App (1st) 103821-U, ¶ 41 ("[The IHRA] actually places the duty on [complainant] to take action if the Department violates the 365-day time limit. That is, if the Department fails to issue its investigation report within the time allotted by section 7A-102(G)(1) (*i.e.*, 365 days or any agreed extension), 'the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court.'" (quoting 775 Ill. Comp. Stat. 5/7A-102(G)(2)); 775 Ill. Comp. Stat. 5/7A-102(B)("The Department shall . . . send . . . written notice to the complainant and to the respondent informing the complainant of the

complainant's right to . . . commence a civil action in the appropriate circuit court under subparagraph (2) of paragraph (G), including in such notice the dates within which the complainant may exercise this right.").

It is unclear whether the complaint was filed within ninety days of the end of the investigation period. Larry filed his charge with the IDHR on September 3, 2024. As the IDHR did not issue a report by September 3, 2025, there was no report issued within 365 days of the filing of the charge. However, it is unclear from the complaint (and indeed, from any filings in this case) whether the parties agreed in writing to a longer investigation period, and if so, when that investigation period concluded. If the parties agreed to extend the investigation period to March 5 (ninety days before Larry filed the complaint) or beyond, then Larry's complaint was timely. Both the parties and the IDHR believe that the ninety-day filing period began in March, not September, which suggests that the parties did agree to extend the investigation period. *See* ECF 9 at 3; ECF 16 at 3. As such, "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense," so I leave this question until summary judgment or trial. *Sidney Hillman*, 782 F.3d at 928.

NHS attached to its motion to dismiss a notice sent by the IDHR and dated February 5, 2026, to purportedly demonstrate that the complaint should have been submitted between March 2, 2026,

and June 2, 2026. Ex. A, ECF 9-1 at 1. The incorporation-by-reference doctrine allows a district court to consider "documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). However, the notice referenced in Larry's complaint was a notice that he received on March 10, 2026, ECF 1-1 at 9, which was dated March 2, not February 5, ECF 16 at 1. Because the February 5 notice was not referred to in the complaint, I have not considered the February 5 notice in ruling on NHS's motion to dismiss.

IV.

I next consider whether Larry has sufficiently stated claims against NHS. NHS argues that all claims against it should be dismissed because Larry has not adequately pled that NHS was his "employer" under the IHRA. Larry responds that he has pled that NHS was his joint employer because the plaintiff is not required to prove every element of an employer-employee relationship at the pleading stage.

When bringing an employer liability claim under the IHRA, a plaintiff's pleading must "allege facts to establish an employer relationship." *Claussen v. Muchowski*, No. 1:21-CV-05316, 2022 WL 4465931, at *6 (N.D. Ill. Sept. 26, 2022). Illinois courts consider "common-law factors" in determining the existence of an employer-employee relationship, including "the amount of control and

supervision, the right of discharge, the method of payment, the skill required in the work to be done, the source of tools, material or equipment, and the work schedule." *Mitchell v. Dep't of Corr.*, 856 N.E.2d 593, 598 (Ill. App. Ct. 2006) (quoting *Bob Neal Pontiac-Toyota, Inc. v. Indus. Comm'n*, 433 N.E.2d 678, 680 (Ill. 1982)). This test is "nearly identical" to the five-factor *Knight* test, which the Seventh Circuit applies to claims under Title VII of the Civil Rights Act of 1964. *Claussen*, 2022 WL 4465931, at *6; *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79, 381 (7th Cir. 1991); *see also Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701–02 (7th Cir. 2015) (discussing the *Knight* factors).

At the pleading stage of an IHRA claim, the plaintiff must at least allege facts that, read in the light most favorable to the plaintiff, support a theory that the defendant exercised sufficient control over her to qualify as her joint employer. *See Claussen*, 2022 WL 4465931, at *4, *6; *Mitchell*, 856 N.E.2d at 598. Conclusory statements that multiple defendants employed the plaintiff will not suffice. *See Claussen*, 2022 WL 4465931, at *4, *6 (dismissing plaintiff's Title VII claim because it "simply alleges in conclusory fashion" that two entities employed her and dismissing plaintiff's IHRA claim "for the same reasons she fails to allege a Title VII claim").

Larry has not alleged sufficient facts to support a theory of joint employment. The complaint provides no details of the specific relationship between Larry and NHS, and states only that Larry "was employed as a Quality Technician for Defendants at their facility located at 3400 Wolf Road, Suite 200, Franklin Park, Illinois 60131." ECF 1-1 at 9. The complaint alleges that defendant Vital Proteins "conduct[ed] business and maintain[ed] operations" at the Franklin Park address, but as to NHN and NHS, it merely asserts that they "conduct[ed] business in Illinois." *Id.* at 8. The complaint is otherwise silent as to what relationship Larry has with NHS specifically and what relationships defendants have with each other. Based on the pleading, there is no indication that NHS exercised any control over Larry. These facts are insufficient to support a theory of joint employment.

V.

For the foregoing reasons, I grant in part NHS's motion to dismiss and dismiss Counts XIII through XVIII without prejudice. NHS's motion is otherwise denied. Larry may amend his complaint if he can do so consistently with his obligations under Rule 11.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: November 25, 2026